**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

November 18, 2011

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Allen F. Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

     Re:  John B. Jones v. Michael J. Astrue, Commissioner
          Civil No. SKG-09-1683

Dear Counsel:

Plaintiff, John B. Jones, by his attorney, Stephen F. Shea, Esq., filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied his claim for Disability Insurance Benefits ("DIB") under title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act").

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 3; ECF No. 7). Currently pending before the Court are cross motions for summary judgment. (ECF No. 17; ECF No. 31). No hearing is necessary. Local Rule

105.6.  For the reasons that follow, the Court hereby DENIES

plaintiff's Motion for Summary Judgment (ECF No. 17), DENIES

defendant's Motion for Summary Judgment (ECF No. 31), and

REMANDS the case for further proceedings consistent with this

opinion.

## I. Procedural History

On August 18, 2003, plaintiff filed an application for DIB

under Title II of the Act.  (R. 104-107).  The Social Security

Administration ("Agency") denied plaintiff's initial application

for DIB on February 12, 2004 (R. 30) and again on

reconsideration on November 23, 2004. (R. 35-37).

Plaintiff then filed a request for a hearing before an

Administrative Law Judge ("ALJ") on January 20, 2005.  (R. 38).

A hearing was scheduled for October 3, 2005 with ALJ William F.

Clark.  (R. 283-86).  The initial hearing was postponed because

plaintiff requested additional time to obtain necessary medical

records.  (R. 285).  The next hearing, on February 6, 2006, was

postponed because plaintiff's counsel was not in attendance.

(R. 287-91).  Plaintiff's additional medical records were

obtained for the rescheduled hearing on May 17, 2006.  (R. 294).

The ALJ determined that a portion of the records presented to

him, which plaintiff had indicated were all the available

records, were illegible and therefore postponed the hearing for

a third time and ordered a consultative examination to assess

plaintiff's health. (R. 294-99). After receiving the results of the consultative examination, the ALJ held a hearing on February 5, 2007 to determine plaintiff's claim. (R. 300-51). The ALJ issued a decision denying plaintiff's claim on April 25, 2007. (R. 9-22).

On April 30, 2009, after receiving additional evidence from plaintiff, the Appeals Council denied plaintiff's request for review, at which point the ALJ's decision became the final decision of the Commissioner. (R. 5-8). Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).[1]

## II. Factual Background

Plaintiff was born on July 8, 1951 and is currently 59 years old. (R. 104). Plaintiff was 55 years old at the time of his February 2007 hearing and was 56 years old as of his date last insured, December 31, 2007. (R. 104). Plaintiff graduated high school but has had no additional education or training since that time. (R. 21, 128, 136). Plaintiff has been

---

[1] The two year delay between the final administrative decision and the completion of briefing is regrettable. The parties submitted a proposed scheduling order on November 3, 2009. It appears that, in the course of this appeal, the parties requested (and the Court granted) three motions for extension of time by stipulation of the parties—the first on July 19, 2010, the second on June 25, 2010, and the third on September 24, 2010-after which time the plaintiff submitted his brief. The defendant then requested (and the Court granted) five motions for extension of time with the consent of Plaintiff's counsel-the first on November 19, 2010 and then subsequent motions on December 14, 2010, January 21, 2011, February 17, 2011, and March 21, 2011-before submitting its brief on April 21, 2011.

employed in the past as a veterinary assistant, a truck driver, and a distributor. (R. 148-55, 345).

## A. Medical Evidence

Plaintiff has a history of pancreatitis and received a pancreas transplant in 1978 at Johns Hopkins Hospital. (R. 202). Plaintiff suffered from a post-operative staphylococcal infection and hernia. (R. 202).

Plaintiff was admitted to the emergency room at Montgomery General Hospital on March 12, 2003 with a blood sugar measurement of over 500, exceptional thirst, and "frequent voiding." (R. 202). Plaintiff's primary care physician, Dr. Evelyn Jackson, examined him during his hospitalization and noted that he had "poorly controlled diabetes which may have been exacerbated by recent dental abscess." (R. 208). Dr. Jackson also noted that plaintiff was "profoundly dehydrated." (Id.). Due to his uncontrolled diabetes, Dr. Jackson indicated that plaintiff was "no longer a candidate for treatment only with oral medications." (Id.). Plaintiff was placed on a daily insulin regime to control his diabetes. (R. 202-04). Due to his classification as "insulin-dependent," plaintiff lost his commercial driver's license ("CDL") and was forced to leave his job as a distributor because it required a CDL. (R. 204, 311-12).

The discharge summary noted that plaintiff had "a long history of adult onset diabetes mellitus" and had "poor control" of his blood sugar due to a "need to stay on oral hypoglycemic in order to keep his job as a truck driver." (Id.).  Plaintiff was diagnosed with hypovolemia, insulin-dependent diabetes mellitus, hypertension, pancreatic disease NEC, hypokalemia, periapical tooth abscess, sciatica, gastroduodentis without hemorrhage, and headache.  (R. 202).

On July 11, 2003, plaintiff was admitted to Montgomery General Hospital and treated in the ER for nausea, vomiting, and stomach pain.  (R. 186).  Plaintiff received an x-ray of his chest, which was normal, and an x-ray of his abdomen, which revealed "mild distention of the transverse colon . . . overall bowel gas pattern is non-obstructed . . . no evidence of free air."  (R. 201).  Plaintiff was discharged on the same day.  (R. 186)

Plaintiff was examined by a consultative examiner, Gebreye W. Rufael, M.D., on January 8, 2004.  (R. 227-28).  In a letter to a disability examiner, Dr. Rufael reported that plaintiff was having a hard time managing his blood sugar, had repeated, shooting pain in his left leg, and had a family history of diabetes.  (R. 227).  Dr. Rufael also reported that plaintiff was alert and oriented, had a normal field of vision, normal range of motion in his joints, no motor or sensory deficit, and

normal muscle tone and strength.[2]  (R. 228).  Plaintiff was

diagnosed with "degenerative joint disease with sciatica,

brittle diabetes mellitus, and pancreatic insufficiency."

(Id.).

Plaintiff was admitted to Howard County General Hospital on

April 1, 2004 for nausea, vomiting, and abdominal pain.  (R.

239-40).  He received treatment for his symptoms and was

released on April 8, 2004 with instructions to follow up with

his primary care physician "as soon as possible."  (Id.).  His

final diagnosis on discharge was "acute pancreatitis," "stroke,

status post islet cell transplant," "insulin-dependent diabetes

mellitus," and "hypertension."  (R. 239).  A CT scan of

plaintiff's abdomen was normal.  (Id.).  During a follow-up

examination with his primary care physician on April 20, 2004,

plaintiff reported that he was "occasionally tired" and

"complain[ed] of lots of gas."  (R. 254).  Plaintiff also

complained of pain in his left leg.  (Id.).  His doctor noted

that plaintiff had a "form for disability," but did not indicate

whether or not she completed the form.  (Id.).

Plaintiff also sought an examination at Columbia Eye Care

in January 2006, where testing revealed that plaintiff had a

---

[2]  Dr. Rufael's report contains a "social history" for an individual other
than plaintiff, apparently included by error.  (R. 227).

full field of vision and a corrected visual acuity of 20/30 and 20/50.[3] (R. 265).

Dr. Jackson, plaintiff's primary care physician, was uncooperative in producing needed medical records. (R. 17, 295-96). The records which were produced were largely illegible. (Id.). The legible portion of the records provided by Dr. Jackson show that she saw plaintiff multiple times with complaints related to his sciatica, leg pain, fluctuating blood sugar, and diabetes. (R. 241-57, 266-67, 270-79). While she was treating plaintiff, Dr. Jackson prescribed Percocet for pain, physical therapy, and referred plaintiff to several specialists. (R. 245-57). At Dr. Jackson's request, plaintiff had an MRI of his lumbar spine in March 2003, which was normal (R. 255), and another MRI in December 2006, which indicated a slight disc bulge and mild scoliosis, with possible relation to plaintiff's leg pain. (R. 266).

Additional records submitted by Dr. Jackson, dated September 9, 2004 to December 17, 2006, indicate that plaintiff regularly sought treatment for his previously diagnosed conditions, including his diabetes, back pain, and blood pressure, during that period of time. (R. 266-67). On September 13, 2006, Dr. Jackson diagnosed plaintiff with diabetic neuropathy after he complained about pain in his left

---

[3] While the notes on plaintiff's visual acuity and field of vision are legible in the record, the rest of the diagnosis is not.

leg. (R. 266). On October 11, 2006 plaintiff complained of a heart murmur and was given a cardiac exam. (Id.). At that appointment, Dr. Jackson reported that she smelled alcohol on plaintiff's breath.[4] (Id.). At an appointment on November 2006, plaintiff reported that he had "sore feet and legs" and stated that he could not climb the stairs. (Id.). On December 7, 2006, Dr. Jackson notified plaintiff that his average hemoglobin A1C was "not bad, 7.1%," and reported that his earlier MRI showed "no lumbar disc herniation or spinal stenosis, very mild degenerative disc bulging . . . and mild scoliosis of the foray to the lumbar spine." (Id.).

Dr. Jackson also completed Medical Report Form 402B, giving her opinion as to the extent of plaintiff's disabilities. (R. 241-44). The report contained a mostly illegible listing of plaintiff's diagnoses and medications, but several of the more legible entries, such as "IDDM" (Insulin-Dependent Diabetes Mellitus) and Lantus (a type of long-acting insulin prescribed to diabetics) were recognizable. (R. 241-42). In the report, Dr. Jackson indicated that plaintiff could only sit, stand, walk, climb, carry, or bend for up to one hour in an eight hour work day, and could never squat, reach, or crawl. (R. 242). Dr. Jackson also indicated that plaintiff could lift less than ten pounds, but could use his hand for repetitive actions, such

---

[4] During his testimony before the ALJ, plaintiff claimed the alcohol on his breath was Listerine. (R. 314-15)

as "simple grasping, pushing and fine, and manipulation." (Id.). Additionally, the report indicated "moderate restriction of activities of daily living." (R. 243). Dr. Jackson did not provide any notes or comments explaining or supporting her assertions about plaintiff's disabilities, despite space on the form for comments. (R. 241-44).

Finally, the pharmaceutical records submitted by plaintiff, which only cover the period from May 16, 2005 to April 18, 2006, show only minimal medications, most of which were filled only once by the pharmacy. (R. 258). The pharmacy list included plaintiff's diabetes medications (Lantus and Humulin), as well as Oxycodone (Percocet), all of which were only filled once during the period covered by the printout. (Id.). Plaintiff also provided a list of medications he is taking, but has not provided any additional pharmaceutical records to support the list he presented to the Court. (R. 259).

Due to the limited value of Dr. Jackson's report and her lack of cooperation with respect to plaintiff's medical records, plaintiff's counsel agreed to a consultative examination of plaintiff to supplement the medical record. (R. 295-98). On October 13, 2006, plaintiff was examined by Dr. Njideka Udochi, M.D. at the request of the ALJ. (R. 260-64). Plaintiff reported to Dr. Udochi that he had back problems, frequent dizziness during the day, "extreme fatigue and weakness,"

constant pain, difficulty walking, and difficulty performing daily life activities. (R. 261). Plaintiff reported to Dr. Udochi that he had a stroke, but could not remember when he had the stroke. (Id.). Dr. Udochi noted plaintiff's complaints of back pain and performed an objective review, finding that plaintiff was in "no apparent distress" and was able to move around and dress himself without assistance. (R. 262). Dr. Udochi noted that plaintiff could walk on his heels, but had difficulty walking on his toes and squatting. (R. 263). Dr. Udochi also reported that "the patient did have a large 3/6 systolic ejection murmur maximal in the left lower sternal border." (Id.). Dr. Udochi concluded that plaintiff had uncontrolled diabetes mellitus, a history of back pain, and a history of hypertension. (R. 264).

On February 5, 2004, plaintiff received a Residual Functional Capacity ("RFC") assessment by a Department of Disability Services ("DDS") physician, who found that plaintiff could perform medium exertional work. (R. 229-36). The DDS physician noted that plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk 6 hours in an 8 hour work day, sit (with normal breaks) for a total of about 6 hours in an 8 hour work day, and had unlimited capacity to push and/or pull (R. 230). No other limitations were noted by the DDS physician. (R. 229-236). The

explanation sections of the RFC assessment form were either illegible or blank, and provided no support for the DDS physician's assessment. (R. 230-36).

### B. Testimonial Evidence

#### 1. Disability Report

Plaintiff filed an Adult Disability Report on August 5, 2003. (R. 131). In the report, plaintiff indicated that he has "Diabetes, HBP[5], Heart Murmur, and Diabetic Neuropathy." (R. 122). He indicated that his conditions caused "blurred vision," "a great deal of pain in his left leg," difficulty standing and walking, difficulty controlling his blood sugar during physical activity, dizziness, fatigue, large swings in his blood sugar level, and weakness in his left leg which sometimes requires a cane. (Id.). Plaintiff also indicated that he had been to the emergency room at Montgomery General Hospital on July 11, 2003, but did not note any other emergency room visits or doctor's appointments. (R. 125).

Plaintiff submitted a Reconsideration Disability Report on March 5, 2004. (R. 159). In that report, plaintiff indicated that he suffered from blurred vision, pain in his left leg, numbness and tingling in his left leg, dizziness and fatigue due to low blood sugar, muscle spasms in his abdominal area and back, inability to stand or walk for "any length of time" due to

---

[5] Presumably, this stands for "High Blood Pressure."

pain in left leg, blood sugar drops due to physical activity, and cramping in his back after prolonged periods of sitting. (R. 156).

Plaintiff also indicated that Dr. Jackson had told him he was unable to work, could only perform limited lifting, and needed to avoid stress, but did not provide the documentation or contact information required to support his assertion. (Id.). Plaintiff reported that he was sometimes unable to get his pants on without his wife's help and that his daily activities, such as cooking, household chores, driving, and using the stairs, were either restricted or impossible for him to perform. (R. 158). Additionally, plaintiff noted that he had difficulty sleeping. (Id.). Finally, plaintiff explained that he was depressed from his condition and had difficulty bending, stooping, squatting, and kneeling because of the pain in his left leg. (R. 159). Plaintiff stated that he had been prescribed "Varo Cream" and "Klopin" for these conditions, but these medications are not contained in the pharmaceutical report. (R. 159, 258).

### 2. **ALJ Hearings**

#### A. October 3, 2005 Hearing

At the first hearing, plaintiff requested a continuance to supplement the existing record, submit pharmacy records, and

12

submit records showing a worsening of plaintiff's condition.
(R. 285).  The ALJ granted the continuance.  (Id.).

### B. May 17, 2006 Hearing

At the third hearing[6] held by the ALJ, plaintiff's attorney
indicated that he had obtained records from Dr. Jackson, as well
as a list of medication from plaintiff, and a pharmacy printout
from May 2005 to April 2006.  (R. 294-95).  The ALJ noted that
the records from Dr. Jackson were "90 percent" illegible.  (R.
295).  Due to the incomplete record and plaintiff's inability to
obtain further records from Dr. Jackson, the ALJ recommended
that an additional consultative examination be performed.  (R.
296).  Plaintiff's attorney immediately requested an additional
consultative examination.  (R. 297).  The ALJ then closed the
hearing.  (R. 298).

### C. February 5, 2007 Hearing

The ALJ held a fourth and final hearing on February 5,
2007.  (R. 300).  Plaintiff, represented by Raymond Hertz, and
Vocational Expert ("VE") Diana Sims both testified.  (R. 302).
Plaintiff presented the ALJ with additional records of
plaintiff's recent doctor's appointments at the start of the
hearing and noted that the record was now complete and that
there was no additional reason to continue the matter further to
obtain more records.  (R. 302-03).  Plaintiff testified that he

_____

[6]  The second hearing, held on February 6, 2006, was postponed because
plaintiff's attorney was sick and unable to attend the hearing.  (R. 287-91).

graduated high school in June 1969 and has had no formal education since that time. (R. 307). Plaintiff then testified that he is 5'7" tall and weighs about 104 pounds, down from a usual weight of 120 pounds in the previous year. (R. 307-08). Plaintiff attributed the weight loss to his "diabetes" and "stress" due to selling his family home. (R. 308). Plaintiff stated that, because of his diabetes, he has to restrict the amount of carbohydrates in his diet and "stay away from sugars." (Id.).

Plaintiff then testified about his prior work history, stating that he had last work as a "driver distributor" for Easter Foods in 2003, and prior to that had worked for the State Highway Administration as a driver for inmates picking up trash on the highways. (R. 309-11). Both jobs required a CDL. (R. 312). During his job as a driver for Eastern Foods, plaintiff was required to lift and move boxes weighing up to eighty pounds with the use of a hand truck. (R. 310).

Plaintiff next described his disabilities and why he felt he was unable to work, mentioning that he has trouble seeing in the morning, has intermittent pain in his legs and feet, is afraid to drive, and sometimes collapses without warning. (R. 312). Plaintiff last passed out in late December 2006. (Id.). Plaintiff stated that he sought treatment from his primary care physician at that time, who, he claimed, indicated that he

likely passed out due to low blood sugar. (Id.). There is no
mention of this visit in the records provided by his doctor,
despite the fact that other visits from that time period were
documented and included in the record. (R. 266). Plaintiff
indicated that he has passed out or fallen on other occasions
but has not sought medical treatment, even from a clinic or by
going to an emergency room, because he did not have insurance.
(R. 314). Despite his fear of driving, plaintiff still has a
regular license. (R. 313). Plaintiff no longer has a CDL
because he is on insulin. (Id.). Plaintiff also mentioned that
he does not drink alcohol and explained that "it might [have
been] my mouthwash" when Dr. Jackson noted on her October 11,
2006 report that plaintiff had alcohol on his breath. (R. 314-
15).

Plaintiff then testified that he had hernias from his 1978
pancreas transplant and staph infection which "prevents [him]
from lifting." (R. 315). The last hernia operation plaintiff
recalled was in 1982, but he testified that the fear of
collapsing, difficulty lifting, and difficulty sitting, all due
to his past hernias, kept him from working. (R. 316). With the
exception seeing Dr. Jackson, he denied seeking any treatment
for this. (Id.). Plaintiff also testified that he is unable to
seek a job because he has a bad memory due to diabetes, but has
not sought any medical treatment. (Id.). He also testified

that he has a heart murmur, but has not sought or received any treatment for that condition. (R. 317).

Plaintiff stated that he is currently receiving long-term disability from his job at Eastern Foods in the amount of $1,741 a month and has obtained medical insurance through his wife's job. (R. 318-19).

Plaintiff then explained that, as part of his daily routine, he is able to shower, prepare his own breakfast, walk to the shopping center for exercise, and fix his own dinner. (R. 319). He vacuums sometimes, loads and unloads the dishwasher, and washes and folds the laundry, but is unable to carry the laundry basket up the stairs. (R. 321). The only restriction on his driver's license is a requirement to wear his eyeglasses. (R. 323). He drives short distances about two days a week. (Id.). Plaintiff indicated that he is able to perform most of the activities of daily living: dressing; showering; tying his shoes; using button and zippers; and pouring a half gallon, but not a gallon, of milk without assistance. (R. 326). He testified that the most weight he can lift is "about eight pounds." (R. 327).

Plaintiff described the pain in his legs as an average of about nine on a scale of one to ten, with a "ten" indicating that the pain would cause tears. (R. 328-29). He takes Percocet about three times a day, which reduces the pain to

"about a two." (Id.). Plaintiff indicated to the ALJ that the pain he was experiencing during the hearing was "about a nine," but stated that he was not on the verge of tears during the hearing. (R. 330).

Plaintiff does not see any doctors except for his primary care physician and his eye doctor. (R. 330). He indicated that at his last eye appointment, which was to replace lost eyeglasses, the doctor had indicated that he has cataracts and will have to come back for surgery in six months. (R. 330-31). The ALJ noted that there is no mention of cataracts on the records from plaintiff's eye doctor and plaintiff's attorney indicated that neither he nor plaintiff had any additional records from the doctor. (Id.).

Plaintiff testified that he had been told by Dr. Jackson that he was unable to work because of his current condition. (R. 331).

Plaintiff was then examined by his attorney and testified that he had no additional skills outside of his experience as a driver operator. (R. 339). He also stated that he has blurry vision, which affects his ability to see. (R. 339-40). Additionally, plaintiff explained that he has brittle diabetes. (R. 340).

In further testimony to the ALJ, plaintiff indicated that he had not yet seen the neurologist he was referred to, despite

obtaining medical insurance more than two months prior to the
hearing.  (R. 341).

The ALJ then examined the VE, Diana Sims, who testified
that, based on plaintiff's testimony and the information
provided, plaintiff would be able to perform work at a medium
exertional level, including work as an "unskilled hand packer,"
a "manual finisher," and a "groundskeeper," all of which are
jobs which are available in significant numbers in the national
and local economy.  (R. 344-46).  The VE also found that
plaintiff would be able to perform a number of light exertional
jobs that also exist in the national and local economy, such as
an "information clerk," or a "security clerk."  (R. 346-47).

### III. ALJ Findings

In evaluating plaintiff's claim for DIB, the ALJ was
required to consider all of the evidence in the record and to
follow the sequential five-step evaluation process for
determining disability, set forth in 20 C.F.R. § 416.920(a).[7] If
the agency can make a disability determination at any point in
the sequential analysis, it does not review the claims further.
20 C.F.R. § 1520(a).  After proceeding through all five steps in

---

[7] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or has lasted
or can be expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 416(i)(1)(A) (2004).

this case, the ALJ concluded that plaintiff was not disabled as defined by the Act. (R. 21).

The first step requires plaintiff to prove that he is not engaged in "substantial gainful activity."[8] 20 C.F.R. § 416.920(a)(4)(I). If the ALJ finds that plaintiff is engaged in "substantial gainful activity," plaintiff will not be considered disabled. Id. Here, the ALJ found that plaintiff had not been engaged in "substantially gainful activity since March 13, 2003," which was the alleged onset date of plaintiff's disability. (Id.).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921. There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months. 20 C.F.R. § 416.909. Here, the ALJ determined that plaintiff had a "severe combination of impairments" which included insulin-dependent diabetes mellitus, and sciatica. (Id.). However, the ALJ also

---

[8] Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Work activity is substantial if it involves doing significant physical or mental activities and even if it is part-time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before. 20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. § 416.972(c).

found that, while plaintiff has a history of high blood pressure, the condition is adequately controlled with medication and does not cause any work-related limitations. (Id.).

At step three, the ALJ considers whether plaintiff's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). The ALJ here reviewed sections 9.08 and 1.04 of the Listing of Impairments and determined that plaintiff did not meet any of the listings. (R. 15). In reaching that conclusion, the ALJ relied on the DDS Physician's report, which reached the same conclusion. (Id.). The ALJ noted that plaintiff had presented no additional evidence that would suggest the DDS physician's report was inaccurate. (Id.). Thus, the ALJ found that no presumptive disability existed under step three of the evaluation process. (Id.).

Before an ALJ advances to the fourth step, he must assess plaintiff's RFC, which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(a)(4)(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2). In determining a plaintiff's RFC, ALJs evaluate the plaintiff's

subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes the threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. Id.

The ALJ then considered plaintiff's pain and symptoms, work history, age, education, medication and other treatment, daily activity, and medical record to determine plaintiff's RFC. (R. 15-16). On the basis of plaintiff's evidence and testimony, as well as the two consultative examinations, the ALJ found that

plaintiff had the RFC to: lift/carry 25 pounds frequently and 50 pounds occasionally, and stand and/or walk, with normal breaks, for a total of about 6 hours in an 8 hour work day with unlimited pushing and/or pulling. (R. 15). The ALJ's RFC also set forth the following restrictions: no foot controls; only occasional use of stairs; no climbing on ladders, ropes, or scaffolds; and no hazardous moving machinery or unprotected heights. (Id.).

The ALJ then evaluated plaintiff's subjective complaints of pain and found that plaintiff was "not entirely credible" with respect to the "intensity, persistence, and limiting effects" of his symptoms. (R. 18). The ALJ based his decision on inconsistencies in plaintiff's testimony with respect the medical basis for his symptoms, including some claims, such as cataracts, which were wholly unsupported by the record; non-compliance with medical referrals to help deal with his symptoms; and other inaccurate claims. (R. 18-20).

At the fourth step, the ALJ must consider whether plaintiff retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, The ALJ found that plaintiff was unable to obtain any past relevant work because of his disabilities. (R. 21).

Where, as here, plaintiff is unable to resume his past relevant work, the ALJ must proceed to the fifth and final step.

This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, plaintiff is capable of other work in the national economy. See 20 C.F.R. §§ 404.1520(f), 416.920(f). At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both plaintiff's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that plaintiff can perform alternative skilled or semi-skilled work, it must show that plaintiff possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In this case, the ALJ found that although plaintiff was unable to perform any past relevant work, based on plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs which exist in significant numbers in the national economy. (R. 21-22). Based on VE's testimony on how plaintiff's limitations impeded his ability to perform unskilled, medium exertional work, the ALJ determined that plaintiff could work in occupations such as: hand picker (750

jobs in the local economy and 150,000 jobs in the national economy); manual finisher (800 jobs in the local economy and 180,000 jobs in the national economy); and grounds keeper (21,000 jobs in the local economy and 250,000 jobs in the national economy). (R. 22). The ALJ then determined that plaintiff was not under a disability between March 13, 2003, the alleged onset date, and April 25, 2007, the date of denial of disability services. (Id.).

## IV. Standard of Review

The function of the Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig, 76 F.3d at 589 ; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987). The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

### V. Discussion

On appeal, plaintiff asserts that the ALJ erred in denying his claim for DIB for three reasons: 1) the ALJ erroneously assessed plaintiff's subjective complaints; 2) the ALJ's RFC assessment was incorrect; and 3) the ALJ failed to adequately develop the record. (ECF No. 17, 3-12).

After evaluating the record and the ALJ's decision, the Court rejects plaintiff's contentions that the ALJ inadequately developed the record and that the ALJ's decision that plaintiff's testimony was not "entirely credible" was improperly reached. The Court, however, finds that the ALJ did not adequately explain the basis for his RFC determination and therefore REMANDS the case to the ALJ to properly explain the evidentiary basis for the RFC determination.

## A.   The ALJ's Determination That Plaintiff Was Not "Entirely Credible" is Supported by Substantial Evidence

Plaintiff contends that his subjective complaints were not given proper weight because the ALJ's finding that plaintiff's testimony was not "entirely credible" was unsupported by the record and the ALJ gave "no legitimate reason" for disregarding plaintiff's allegations. (ECF No. 17, 5). Plaintiff also argues that the ALJ failed to consider the credibility factors outlined in Social Security Ruling 96-7p. (Id.).

In determining whether or not a claimant's subjective testimony concerning pain is sufficient to support a finding of disability, the ALJ must apply a two-step process. Craig, 76 F.3d at 594-95. First, the ALJ must find that there is objective medical evidence that could reasonably be expected to produce the pain or other symptoms alleged. Id. at 594 (citing 20 C.F.R §§ 416.929(b) & 404.1529(b); 42 U.S.C. § 423(d)(5)(a)).

Second, the ALJ must consider the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work, which includes an evaluation of the claimant's credibility and "all the available evidence" of pain or other symptoms. Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1), 416.929(c)(2), 404.1529(c)(1), & 404.1529(c)(3)). In making these credibility determinations, the ALJ has a duty to "refer specifically to the evidence informing the ALJ's conclusion . . . and [this duty] is especially crucial in evaluating pain." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (quoting Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984)).

The regulations and case law addressing pain and credibility determinations are explained in a Social Security Ruling, which lays out the two-step process in detail and explains the seven factors, in addition to objective medical evidence, that the adjudicator must consider:

> 1) The claimant's daily activities;
> 2) The location, duration, frequency and intensity of the claimant's pain or other symptoms;
> 3) Factors that precipitate and aggravate the symptoms;
> 4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
> 5) Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
> 6) Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> 7) Any other factors concerning the claimant's functional
> limitations and restrictions due to pain or other symptoms.

SSR 96-7p. The Ruling goes on to state that "the finding must

be grounded in the evidence and articulated in the determination

or decision . . . it is not sufficient to make a conclusory

statement . . . it is also not enough for the adjudicator simply

to recite the factors." Id. Further, the determination "must

contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight." Id.

Medical evidence may be used to "help an adjudicator to draw

appropriate inferences about the credibility of an individual's

statements." Id.

In this case, the ALJ recited the seven factors listed in

SSR 96-7p and took testimony on each of those factors. (R. 16).

After taking testimony on plaintiff's daily activities, pain

level and aggravating factors, medications and other treatments,

and the objective medical evidence of plaintiff's conditions,

the ALJ determined that, while plaintiff had "medically

determined impairments that could reasonably be expected to

produce a degree of the alleged symptoms," plaintiff's testimony

on the "intensity, persistence, and limiting effects of these

symptoms are not entirely credible." (R. 16-18). After making this determination, the ALJ laid out nine reasons why he did not find plaintiff's testimony to be credible. (R. 19-20).

The ALJ found several discrepancies between the record and plaintiff's testimony. (Id.). First, plaintiff testified that he was unable to work because of his impairments, but he lost his job as a truck driver solely because of a state law prohibiting individuals who are insulin-dependent from holding a CDL. (R. 19). Plaintiff then testified that he had cataracts, but the most recent report from plaintiff's eye doctor states that plaintiff indicated no major visual problems and that his "chief complaint" was that he lost his eyeglasses. Id. Plaintiff also testified that he has not had alcohol in several years, but a 2006 doctor's note from the patient's doctor indicated that he had alcohol on his breath.[9] (R. 20).

In addition to these three testimonial discrepancies, the ALJ found three instances where plaintiff was either non-compliant with treatment orders or non-cooperative during a physical examination. (R. 19). In January 2006, plaintiff admitted to his doctor that he had not been checking his blood sugar regularly and had been keeping an inconsistent diet. (R. 19, 267). Plaintiff ignored his doctor's referrals to other

---

[9] As noted above, plaintiff claimed the alcohol on his breath was Listerine during his testimony before the ALJ. (R. 314-15).

doctors for treatment of his various ailments since he was first referred in 2003.[10]  (R. 19).  Moreover, plaintiff was not cooperative on straight leg raising testing during his consultative examination.  (R. 19).

The ALJ found that the medical evidence provided by plaintiff's primary care physician and consultative examinations indicated that plaintiff had only "mild scoliosis" and "very mild degenerative disc bulging," as well as that plaintiff's condition was "essentially within normal limits."  (R. 19-20). Additionally, plaintiff did not submit a complete record of his medications received, as requested by the ALJ. (R. 20). Instead, he submitted an incomplete record that included only eleven months of prescriptions, instead of several years' worth. (Id.).  Finally, plaintiff did not produce a functional capacity exam that purportedly showed that plaintiff could not work.  (R. 20).

The ALJ identified multiple factors that demonstrate a substantial basis for his determination that plaintiff's testimony was not entirely credible.  He solicited testimony on all of the SSR 96-7p factors and explained the reasoning for his determination.  As such, the Court cannot disturb the ALJ's credibility finding.

---

[10] Plaintiff testified that this was due to his lack of medical insurance at the time and had only recently obtained medical insurance through his wife's coverage.  (R. 318-19).

**B.    The ALJ Failed to Support His RFC Analysis With Specific Evidence**

Plaintiff next argues that the ALJ's RFC determination was inadequate because the ALJ failed to provide a narrative discussion of how the RFC determination was reached.  (ECF No. 17, 9).  Additionally, plaintiff argues that the RFC determination is facially inconsistent as it limits plaintiff to jobs that do not require foot controls, but permits him to work in a job that requires him to be on his feet, carrying 25 pounds for 6 hours a day.  (ECF No. 17, 9-10).  Plaintiff also contends that the ALJ's RFC analysis is incorrect because it fails to consider his additional symptoms of fatigue and dizziness.

In determining plaintiff's RFC, the ALJ must consider "all relevant medical or other evidence," including plaintiff's medical history, informal and formal statements from medical sources on plaintiff's capacity to do work, and descriptions and observations about plaintiff's limitations provided by plaintiff or his family, friends, and other acquaintances.  20 C.F.R. § 416.945.

Social Security Administration rulings require the ALJ to provide a narrative discussion of his RFC findings.  SSR 96-8p; see also, Fleming v. Barnhart, 284 F.Supp.2d 256, 271 (D. Md. 2003) (quoting SSR 96-8p) ("An RFC assessment must 'include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts and non-medical evidence.'"). The narrative discussion requirement is consistent with both federal legislation and Fourth Circuit precedent. See, e.g., 42 U.S.C. § 405(b)(1) (requiring the Social Security Administration to "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (finding that without a comparison between the listed requirements of an impairment and the evidence of plaintiff's symptoms, it is "simply impossible to tell whether there was substantial evidence to support the determination"). Furthermore, Social Security Rulings are less

The ALJ's RFC analysis "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." SSR 96—8p. Furthermore, the ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting, and describe the maximum amount of each work-related activity the individual can perform." Id. Finally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

In this case, while the ALJ provided a narrative discussion of the medical and non-medical evidence and included the

relative weight given to plaintiff's testimony, Dr. Jackson's medical records, and the consultative exams, there is no discussion of how the evidence presented applies to the specific limitations in plaintiff's RFC. For example, the ALJ states that plaintiff has the "additional restriction of no foot controls; only occasional climbing on ramps and stairs; no climbing on ladder, ropes or scaffolds and must avoid hazardous moving machinery and unprotected heights," but does not explain, what, if any, evidence was considered in placing those restrictions. (R. 15). While the ALJ discussed the specific limits on plaintiff's work activity (e.g. "stand and/or walk, with normal breaks, for a total of about 6 hours in an 8 hour workday"), no specific medical or non-medical evidence in support of this finding was cited at any point in the ALJ's decision. The ALJ's unsupported assertion that, "[b]ased on a review of the entire record, I find that the evidence establishes that claimant's insulin-dependent diabetes mellitus and sciatica limit him to [the proposed RFC]" is insufficient to meet the explanatory requirements for RFC findings. See, e.g., Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, *11 (D. Md. December 14, 2009)(remanding because where "the ALJ 'makes no connection between the evidence she cited and the specific limitations she found the plaintiff to have' then the ALJ has not provided the requisite narrative" to support the RFC finding

(quoting Schwemmer v. Barnhart, No. SKG-02-2205, slip. op. at 40 (Nov. 3, 2003)).

The defendant contends that this "insufficient narrative" argument has been rejected by the courts in several analogous cases. (ECF No. 31). The cases cited by the defendant, however, do not reject the "insufficient narrative" argument as grounds for remand; rather, the Court in those cases found that the narrative provided by the ALJ was sufficient. Moore v. Astrue, No. 09-2359, 2011 WL 673778, *3 (D. Md. February 17, 2011) (finding that the "ALJ's discussion fully and logically explains the evidence which is consistent with the ALJ's [RFC] determination"), see also Dillon v. Astrue, No. 08-2597, 2011 WL 337334, *3-4 (D. Md. January 31, 2011); Savoy v. Astrue, No. 09-3160, 2011 WL 232136, *3 (D. Md. January 24, 2011); Farmer v. Astrue, No. 09-907, 2010 WL 4273911, *2 (D. Md. October 27, 2010). Furthermore, the opinions cited provide no substantive analysis of the ALJ's decision and as such provide no assistance to this Court's consideration of the ALJ's decision here. See, e.g., Moore v. Astrue, 2011 WL 673778 at *3 (containing no detail on the ALJ's findings or decision, but noting that the decision "fully and logically" supported the RFC). In this case, the ALJ's decision did not show how the evidence "fully and logically" supported the RFC determination, rather, the ALJ discussed the evidence in narrative form and then asserted that

the "evidence establishes that [plaintiff's] insulin-dependent diabetes mellitus and sciatica limit him to the [RFC determination]" without providing any explanation as to how the record supports the RFC. (R. 21).

Without the proper explanations of the ALJ's decision making process, it is impossible for the Court to determine whether or not the decision was based on substantial evidence. <u>Cook</u>, 783 F.2d at 1173. Where the Court cannot determine if the ALJ's decision was based on substantial evidence because the ALJ did not properly explain the basis for his decision, the Court must remand the case for further explanation. <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235 (4th Cir. 1984); <u>Smith v. Heckler</u>, 782 F.2d 1176, 1181-82 (4th Cir. 1984). This case must be remanded to the ALJ for further explanation as to what aspects of plaintiff's medical history support the RFC assessment.

Plaintiff's remaining RFC arguments, that the ALJ's analysis was facially inconsistent and that the ALJ failed to consider plaintiff's fatigue and dizziness in the RFC analysis, cannot be properly analyzed by the Court because the ALJ did not explain how the evidence supported his RFC analysis.

**C.    The ALJ Properly Developed the Administrative Record**

Finally, plaintiff argues that the ALJ failed to properly develop the administrative record pursuant to <u>Fleming v. Barnhart</u>, 284 F. Supp. 2d 256, 272 (D. Md. 2003) and 20 C.F.R. §

404.1512(e).  Specifically, plaintiff faults the ALJ for failing
to re-contact plaintiff's treating physician after stating,
during plaintiff's hearing on May 17, 2006, "basically, what we
have here, we have an incomplete record."  (R. 296).

The ALJ has "a duty to assume a more active role in helping
claimants develop the record."  Sims v. Harris, 631 F.2d 26, 28
(4th Cir. 1980).  The ALJ must "explore all relevant facts and
inquire into the issues necessary for adequate development of
the record, and cannot rely only of the evidence submitted by
the claimant when that evidence is inadequate."  Walker v.
Harris, 642 F.2d 712, 714 (4th Cir. 1981); Marsh v. Harris, 632
F.2d 296, 300 (4th Cir. 1980).  The duty to develop the factual
record is more pronounced where plaintiff is not represented
when appearing before the ALJ.  Fleming, 284 F. Supp. 2d at 272.

In this case, the ALJ adequately fulfilled his duty to
develop the record.  On two separate occasions, the ALJ provided
a continuance for plaintiff to obtain further medical records
from his doctors.  (R. 285, 294-98).  Additionally, given the
numerous attempts to obtain documentation from plaintiff's
primary care physician and the illegible writing on many of the
documents obtained, the ALJ ordered a second consultative
examination, which was agreed to by plaintiff's attorney at the
time.  (R. 296).  Furthermore, plaintiff's attorney stated that
all the medical records in plaintiff's possession had been given

to the Court.  (R. 295-96).  Finally, even with the illegible records provided by plaintiff's doctor, the record includes substantial information on each of plaintiff's infirmities, diabetes and sciatica, including hospitalization, doctor's visits, and prescriptions.  Accordingly, the record was adequately developed to allow review and decision.

## VI. Conclusion

For the reasons set forth above, the Court finds that the ALJ appropriately evaluated plaintiff's subjective complaints, and properly developed the record, but failed to adequately explain the basis for the RFC assessment.  Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 17), DENIES defendant's motion for summary judgment (ECF No. 31), and REMANDS the case for further proceedings not inconsistent with this judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge